**John ARMSTRONG, By and Through his guardian Debi STEFFENSEN, Plaintiff,**

**v.**

**ALICANTE SCHOOL, et al., Defendants.**

**No. CIV.S–97–1499FCDJFM.**

United States District Court, E.D. California.

March 19, 1999.

Douglas Earl Kirkman, Wagner Kirkman and Blaine, Sacramento, CA, for plaintiff.

William Kenneth Blakemore, Donahue Wood Loving Myers and Vogel, Sacramento, CA, for defendants.

*MEMORANDUM AND ORDER*

DAMRELL, District Judge.

Plaintiff John Armstrong,[1] brings this action against defendant Alicante School

---

1. Plaintiff, a minor, brings this action by and through his mother and guardian Debi Steffensen.

and its owners and operators Associated Childcare Educational Services ("ACES"), Marty Weber, Jerry Waggoner and Owen Elmer alleging said defendants caused him to suffer personal injuries and violated his rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, 42 U.S.C. § 1983, the Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and California Code of Regulations, Title 5, Division 1, §§ 3000 *et seq.* Defendants move for summary judgment, or in the alternative summary adjudication. For the reasons set forth below, defendants' motion is granted.[2]

## BACKGROUND

Plaintiff John Armstrong is an emotionally disturbed and developmentally disabled individual. From 1991 through February 27, 1996, plaintiff was a student at the Alicante School ("Alicante") in Carmichael, California. Alicante is a private school providing facilities for and educational services to individuals with behavioral, emotional, learning and developmental disabilities pursuant to a contract with Grant Union School District.

This action arises from plaintiff's alleged ingestion of PCP in the boys' restroom at Alicante. According to plaintiff, officials at Alicante negligently or deliberately tolerated the use of illegal drugs on its campus, and as a result, he was provided with and ingested PCP. Plaintiff contends he was damaged by said ingestion in that he can no longer live at home and must remain in a residential care facility.

## 1. Individuals With Disabilities In Education Act (IDEA)

■ The purpose of the IDEA is to, among other things, "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and re-

lated services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(b)(1)(A). In order to qualify for federal financial assistance under the IDEA, a state must demonstrate that it "has in effect policies and procedures that ensure that ... [a] free appropriate education is available to all children with disabilities ...." 20 U.S.C. § 1412(1). After the exhaustion of certain administrative remedies, a civil action may be brought in state or federal court concerning "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education of such child." *Rowley,* 458 U.S. at 204–05, 102 S.Ct. 3034 (quoting 20 U.S.C. § 1415(b)(1)(E)). Here, plaintiff contends that by tolerating the use of illegal drugs at Alicante, defendants failed to provide him with an appropriate public education as required under the IDEA.

The Supreme Court addressed the issue of "[w]hat is meant by the [IDEA's] requirement of a 'free appropriate public education'" in *Board of Education of the Hendrick Hudson Central School Dist. v. Rowley,* 458 U.S. 176, 186, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The question there was whether the IDEA's requirement of a "free appropriate education" required the state to maximize the potential of disabled children. The Court began its analysis by looking to the definition of "free appropriate public education" set forth in the IDEA.

[Free appropriate public education] means special education and related services that-

(A) have been provided at public expense, under public supervision and direction, and without charge,

(B) meet the standards of the State educational agency,

**2.** Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78–230(h).

(C) include an appropriate preschool, elementary, or secondary school education in the State involved, and

(D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

20 U.S.C. § 1401(a)(8). "Related services" are defined as "transportation, and such developmental, corrective, and other supportive services . . . . as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(22). Examples of "related services" are "speech-language pathology and audiology services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only." *Id.*

Based on these statutory definitions, a child receives a free appropriate public education if the program (1) addresses the child's unique needs, (2) provides adequate support services so the child can take advantage of the educational opportunities, and (3) is in accord with the individualized education program ("IEP"). *Rowley,* 458 U.S. at 188–89, 102 S.Ct. 3034.

Plaintiff does not contend that the program did not address his unique needs or is not in accord with his IEP. Rather, plaintiff appears to contend that by tolerating what he describes as "rampant drug use" on the Alicante campus (which allegedly resulted in his ingestion of PCP and subsequent placement in a residential care facility) defendants failed to provide him with "adequate support services" so as to allow him to take advantage of the educational opportunities.

It is obvious that drug use may impede any student's ability to take advantage of the educational opportunities. Such a determination, however, does not end the court's inquiry. The question remains whether drug prevention is the type of "supportive service" contemplated under the IDEA. The court finds it is not. There are a myriad of conditions caused by action or inaction within the school environment which may impede an individual's ability to take advantage of the educational opportunities, from poor ventilation to poor diet to poor sanitation. Indeed, such conduct may be actionable. However, the court finds that, in enacting the IDEA, Congress did not intend to create a federal claim for every activity or type of conduct which may impede an individual's ability to take advantage of the educational opportunities.

Plaintiff relies on *Hayes v. Unified School Dist. No. 377,* 877 F.2d 809 (10th Cir.1989) for his assertion that the prevention of drug use falls within the purview of the IDEA. In *Hayes,* the Tenth Circuit held that time-out and in-school suspension period were matters "relating to . . . the provision of a free appropriate public education," 20 U.S.C. § 1415(b)(1)(E), and thus were within the scope of the IDEA. *Id.* at 813. The court reasoned:

> This case is illustrative of the close-relationship between the use of discipline and in-class instruction in providing a child with a "free appropriate public education". We believe that proper conduct and education are inextricably intertwined, . . . and hold that the discipline of a child in the classroom, including short-term suspensions and "time-out" periods, is a matter that relates to the public education of a [disabled] child and that therefore falls within the scope of the [IDEA].

*Id.* Unlike discipline, the prevention of drug use is not inextricably intertwined with the provision of an appropriate public education as required under the IDEA. Indeed, discipline is ongoing and integral part of every educational process; drug prevention is not. Understandably, drug prevention is being deployed as an everyday strategy in many educational settings. The IDEA, however, compels no response

to the problem of drug use in schools. Therefore, the failure to implement such a strategy does not give rise to a claim under the IDEA. To the extent *Hayes* suggests otherwise, the court believes its holding is contrary to Congress's intent as set forth in the IDEA, and thus, declines to follow it. *See Gunther v. The County of Washington,* 623 F.2d 1303, 1319 (9th Cir. 1979). Because drug prevention and/or intervention are not the type of "services" Congress sought to require or regulate under the IDEA, summary adjudication of this claim is appropriate.

### 2. Americans With Disabilities Act

▮ In his compliant, plaintiff contends defendants violated his rights under the ADA, 42 U.S.C. §§ 12101–12213. However, plaintiff fails to allege any facts in support of said allegation, and does not address defendants' contention that summary adjudication of this claim is appropriate in his opposition.

Under the ADA:

[N]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182. Alicante is considered a place of public accommodation. *See id.* at § 12181(7)(J). Plaintiff has failed to allege or produce any evidence that defendants discriminated against him based on his disability. Accordingly, summary adjudication of this claim is appropriate.

### 3. 42 U.S.C. § 1983

In his complaint, plaintiff contends defendants violated his rights under 42 U.S.C. § 1983. As with his ADA claim, however, plaintiff fails to allege any facts in support of said allegation. In his opposition to the instant motion, plaintiff contends that his § 1983 is based on defendants' alleged violation of the IDEA. *See* Opposition at 14:14–17:15. As set forth

above, defendants did not violate the IDEA. Accordingly, summary adjudication of this claim is appropriate.

### 4. State Law Claims

▮ Subject to the conditions set forth in 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over state law claims. *See Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1000 (9th Cir.1997) (en banc). The court's decision whether to exercise supplemental jurisdiction should be informed by values of economy, convenience, fairness and comity. *Id.* at 1001 (citations omitted). However, primary responsibility for developing and applying state law rests with the state courts. Therefore, when federal claims are eliminated before trial, district courts should ordinarily decline to exercise supplemental jurisdiction. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Gini v. Las Vegas Metro. Police Dep't,* 40 F.3d 1041, 1046 (9th Cir.1994) (citing *Schneider v. TRW Inc.,* 938 F.2d 986, 993 (9th Cir. 1991)). Accordingly, the court declines to retain supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(1).

### CONCLUSION

1. Defendants' motion for summary judgment is GRANTED as to plaintiff's IDEA, ADA and § 1983 causes of action.

2. The court declines to exercise jurisdiction over the remaining state law claims. Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.

3. The clerk is directed to close this file.

IT IS SO ORDERED.