Donna BRAUNLING, Plaintiff–
Appellant,

v.

COUNTRYWIDE HOME LOANS INC.,
a New York Corp.; Cathy Kister, an
individual, Defendants–Appellees.

No. 98–56929.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 2000.

Filed July 21, 2000.

Bennett Rolfe, Law Offices Rolfe, Smith–Low & Coleman, Camarillo, California, for the plaintiff-appellant.

Tracy L. Cahill, Mitchell Silberberg & Knupp, Los Angeles, California, for the defendants-appellees.

Before: BROWNING, HALL, and SILVERMAN, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Donna Braunling ("Braunling") appeals the district court's order granting summary judgment in favor of Countrywide Home Loans, Inc. ("Countrywide"). Braunling had sued Countrywide asserting causes of action for disability discrimination under the Americans with Disabilities Act ("ADA"), and its California counterpart, the Fair Employment and Housing Act ("FEHA"), in addition to a cause of action for intentional infliction of emotional distress. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

I

Braunling suffers from Multiple Sclerosis ("MS"). This degenerative disease causes Braunling to experience a variety of conditions including extreme fatigue, dizziness, sensitivity to light, heat, humidity and stress. MS also prevents Braunling from walking extensively. Because of these symptoms, she is unable to put in overtime at work, nor is she able to take work home.

In 1995, after a ten-year career in the loan industry, Braunling began employment at Countrywide as an underwriting supervisor. Upon beginning her employment she requested not to be scheduled to work in the early morning shifts and not to be assigned projects that required her to take work home. These requests were granted. After one year, she requested a transfer to an available position as senior underwriting supervisor, a job with significantly larger responsibilities. Countrywide has a policy which allows its employees to transfer within the company so long as they have been in the position from which they are requesting a transfer for at least one year, have performed satisfactorily, and are approved by the responsible supervisor. Braunling's request was approved.

Braunling's transfer resulted in her being placed under the direct supervision of Cathy Kister ("Kister"). From both Braunling's and Kister's accounts, the rela-

tionship between the two was all but smooth from the very beginning. Braunling stated in her deposition that these problems began before Kister was apprised of Braunling's MS condition in December 1996. However, Braunling contends that these problems got significantly worse after Kister found out that Braunling had MS, in that Kister allegedly frequently "bullied" Braunling. Braunling also alleges that when she informed Countrywide that she was going to file a complaint with the EEOC regarding Kister's behavior towards her, she was subjected to a "barrage of invective" by someone from Countrywide's human resources department. Notwithstanding the above, Braunling cannot recollect any negative comments by Kister or others that referred to her MS.

By Countrywide's account, Braunling was unable to perform in a satisfactory manner in her new position as senior underwriting supervisor. Countrywide asserts that Braunling: (1) failed to properly respond to customer complaints; (2) failed to review audits; (3) inserted incorrect information in her analyses; and (4) failed to properly complete her database entry. Braunling does not dispute that she made mistakes, but contends that her errors were the result of faulty technology provided by Countrywide, and that she often complained to Countrywide's computer department about her problems. Braunling admits that many of these technological mishaps were resolved by January 1997, three months before her termination. However, notwithstanding her acknowledged errors, Braunling states that her performance was comparable to that of other employees.

Due to Countrywide's perception that Braunling was not performing adequately, she was counseled verbally and in writing both by Kister and other supervisors. After Braunling received her first written counseling from Kister in early March 1997, Braunling contacted Countrywide's human resources department to complain

about Kister. Countrywide contends that the human resources department interceded on Braunling's behalf, and assisted Braunling in getting Kister's approval for Braunling's transfer to another department, even though Braunling had not been in her new position for the one year required by Countrywide's transfer policy. Braunling contends that such intercession did not occur, and that Countrywide refused to transfer her from her senior underwriting supervisor position. In April 1997, Braunling was terminated.

Braunling filed a timely complaint in California state court alleging causes of action under FEHA for disability discrimination, and for intentional infliction of emotional distress. She later added a cause of action under the ADA, which prompted Countrywide to remove the case to federal district court. The district court subsequently granted Countrywide's motion for summary judgment on all claims. Braunling appeals this ruling.

II

We review the grant of summary judgment de novo. *See Robi v. Reed,* 173 F.3d 736, 739 (9th Cir.1999). The evidence is reviewed in the light most favorable to the nonmoving party to determine whether there exist any disputed genuine issues of material fact that would preclude summary judgment. *See Berry v. Valence Technology, Inc.,* 175 F.3d 699, 703 (9th Cir.1999). If no such disputes exist, the moving party is entitled to judgment as a matter of law. *See Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998).

A. DISCRIMINATION CLAIM

■ In order to qualify for relief under the ADA, the plaintiff must show that: (1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job she holds or seeks; and (3) that she suffered an adverse employment action because of her disability.[1] *See Kennedy v.*

---

**1.** Because California courts rely on federal discrimination cases to interpret FEHA, all

*Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996). The district court ruled that Braunling had established the first prong of the test, but had failed to meet the latter two.

### 1. *Disability*

■ Under the ADA, an employee is disabled if, in relevant part, her physical or mental impairment substantially limits one or more of the major life activities. *See* 42 U.S.C. § 12102(2)(A). To determine whether a major life activity is restricted, courts must consider, in relevant part, the permanent or long-term impact of the impairment. *See* 29 C.F.R. § 1630.2(j)(2)(iii). Courts have found that MS fits into the above-described categorization of a disability. *See Moritz v. Frontier Airlines, Inc.,* 147 F.3d 784, 786–87 (8th Cir.1998). In this case, Braunling has offered evidence that she was diagnosed with MS in 1995, and that she suffers some of the debilitating consequences of the disease such as poor ambulation ability and extreme fatigue. Therefore, she fits the definition for "disabled" under the ADA.

### 2. *Reasonable Accommodation*

■ To comply with the anti-discrimination law, an employer must reasonably accommodate the employee with a disability unless the employer can show that such an accommodation would impose an undue hardship on the running of the business. *See McAlindin v. County of San Diego,* 192 F.3d 1226, 1236 (9th Cir.1999), *opinion amended on denial of rehearing,* 201 F.3d 1211 (9th Cir.2000); *see also* 42 U.S.C. § 12112(b)(5)(A). The plaintiff has the burden of providing at least a facial show-ing that a reasonable accommodation is possible.[2] *See Buckingham v. United States,* 998 F.2d 735, 740 (9th Cir.1993). Reassignment to another position is generally considered a reasonable accommodation. *See* 29 C.F.R. § 1630.2(o)(2)(ii).

■ Construing the evidence in the light most favorable to Braunling, it appears that Braunling was not qualified for the job as senior underwriting supervisor. That is, she has failed to demonstrate that her reduced performance in this position was attributable to Countrywide's failure to transfer her away from Kister's supervision. *See Summers v. Teichert & Son, Inc.,* 127 F.3d 1150, 1154 (9th Cir.1997). Even before Kister is alleged to have been informed about her MS, Braunling was experiencing serious difficulties with her job duties. Countrywide points to four specific tasks, illustrated above, that Braunling was unable to perform adequately. It was only when Kister was forced to reprimand Braunling verbally the first time for falling below Countrywide standards that Kister found out that Braunling had been diagnosed with MS. Therefore, this initial reprimand cannot have been a consequence of Kister's alleged discrimination against Braunling for the latter's medical condition.

The fact that Braunling was underperforming in her new position regardless of her MS also goes to show that the accommodation she suggests, a transfer to another supervisor, could not have improved her situation. To parry such a conclusion, Braunling asserts that other factors, such as deficient technology, contributed to her poor performance, and that therefore her

---

analysis pertaining to the ADA also pertains to FEHA. *See Brundage v. Hahn,* 57 Cal. App.4th 228, 235, 66 Cal.Rptr.2d 830 (1997); *see also Bradley v. Harcourt, Brace and Co.,* 104 F.3d 267, 271 (9th Cir.1996).

2. It is still disputed whether, in this circuit, the plaintiff has the burden of showing the existence of a specific reasonable accommodation that is available to the employer. A Ninth Circuit panel had held that a plaintiff had to meet such a burden. *See Barnett v.*

*U.S. Air, Inc.,* 196 F.3d 979, 988–89 (9th Cir. 1999). However, that opinion has been vacated, *see Barnett v. U.S. Air, Inc.,* 201 F.3d 1256 (9th Cir.2000), and the case was argued before an en banc panel on June 22, 2000. *Barnett* is of little relevance in this case because Braunling has already identified what specific accommodation was available to her at Countrywide, and therefore the outcome of this case will not be affected regardless of the ultimate outcome of *Barnett.*

job evaluation should be viewed in this light. The problem with this argument is that it is contradicted by Braunling's own testimony. According to Braunling, her computer-related problems were corrected by January 1997. After this date, Braunling's performance was still substandard until her termination in April 1997. A transfer to another supervisor would not have affected this situation and therefore Braunling cannot show that she could perform the essential functions of her position even with the accommodation she suggested to Countrywide.

## B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

 Under California law, to make out a cause of action for intentional infliction of emotional distress, a plaintiff must show, in relevant part, that the defendant engaged in extreme and outrageous conduct that exceeded the bounds of what is generally tolerated in a civilized society. *See Trerice v. Blue Cross of California*, 209 Cal.App.3d 878, 883, 257 Cal.Rptr. 338 (1989). Conduct which exhibits mere rudeness and insensitivity does not rise to the level required for a showing of intentional infliction of emotional distress. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir.1991).

In *Schneider*, this Court was presented with the issue of whether certain facts alleged by the plaintiff/employee with regards to defendant/employer's conduct rose to the level required by the intentional infliction of emotional distress standard. In that case, the conduct alleged consisted of the defendant: (1) yelling and screaming in the process of criticizing plaintiff's job performance; (2) yelling and screaming at plaintiff for making a mistake; (3) threatening to terminate plaintiff from her employment; and (4) making threatening gestures. *See Schneider*, 938 F.2d at 992. The *Schneider* court ruled that even though such behavior was rude and insensitive, it did not exhibit that "outrageous-

ness" necessary to rise to the level of intentional infliction of emotional distress. *See id.* at 993.

 The conduct that Braunling contends forms the basis of her intentional infliction of emotional distress claim is the same conduct that she contends forms the basis of her discrimination claims. The only specific incident that Braunling points to in support of her claim is the episode where she had to withstand a tirade from someone within Countrywide's human resources department. According to Braunling's own testimony, although she disliked Kister, working with Kister just made Braunling "[not] very comfortable." Under the standard outlined above, mere discomfort does not approach the level of extreme and outrageous conduct necessary to make a claim for intentional infliction of emotional distress. Discomfort is not a condition that "no reasonable [person] in a civilized society should be expected to endure." *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal.App.3d 376, 397, 89 Cal.Rptr. 78 (1970).

Braunling attempts to suggest that such discomfort in the context of generalized discriminatory behavior should suffice to meet the required standard. However, this assertion is squarely contradicted by *Schneider* where the intentional infliction of emotional distress claim was coupled with other claims for, in relevant part, discrimination based on age and national origin. *See Schneider*, 938 F.2d at 988. There is no relevant distinction between the facts of *Schneider* and the facts of this case. Therefore, Braunling has failed to allege conduct by Countrywide which is extreme and outrageous.[3]

AFFIRMED.

---

**3.** In light of this conclusion, we do not reach the issue, not addressed by the district court, of whether the California Workers' Compen-

sation Act preempts Braunling's claim for intentional infliction of emotional distress.