**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KATHY WRIGHT, | No. 12-57116 |
| Plaintiff - Appellant, | D.C. No. 8:11-cv-01563-DOC-RNB |
| v. | |
| UNITED PARCEL SERVICE, INC., a corporation, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted December 9, 2014
Pasadena, California

Before: WARDLAW and BERZON, Circuit Judges and SMITH,[**] District Judge.

Plaintiff Kathy Wright appeals the district court's grant of summary

judgment to defendant United Parcel Service, Inc. ("UPS") on Wright's California

Fair Employment and Housing Act ("FEHA") disability discrimination claims,

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable William E. Smith, District Judge for the U.S. District Court the District of Rhode Island, sitting by designation.

alleging UPS wrongfully failed to reinstate her, failed to accommodate her, and did not engage in good faith in an interactive process to accommodate her disability. We reverse and remand.

(1) There were genuine issues of material fact on Wright's disability discrimination claim.

(a) To establish a prima facie disability discrimination case under FEHA, a plaintiff must show, inter alia, that she was a "qualified individual" who "could perform the essential [functions] of the job with or without reasonable accommodations." *Wills v. Superior Court*, 194 Cal. App. 4th 143, 159–60 (2011); *see also Green v. State*, 42 Cal. 4th 254, 265 (2007). "'Essential functions' means the fundamental job duties of the employment position . . . . 'Essential functions' does not include the marginal functions of the position." Cal. Gov't Code § 12926(f); *see also* Cal. Code Regs. tit. 2, § 11065(e) (defining essential and marginal functions). Determining the essential functions of a position requires "[a] highly fact-specific inquiry." *Cripe v. City of San Jose*, 261 F.3d 877, 888 n.12 (9th Cir. 2001); *see also* Cal. Gov't Code § 12926(f)(1), (f)(2) (listing bases for deeming a job function essential and evidence pertinent to the issue).

Although somewhat of a close call, construing the evidence in the light most favorable to Wright, there was a genuine dispute of material fact as to whether

lifting packages weighing more than 40 pounds unassisted was an essential function of the utility driver position.[1] *See Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011). On the summary judgment record, a reasonable jury could conclude that the requirement of lifting such packages was a marginal function.

To be sure, there is some support in this record for UPS's position that utility drivers were required to lift packages weighing more than 40 pounds unassisted. UPS's written job description identifies the ability to "[l]ift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds" and "[a]ssist in moving packages weighing up to 150 pounds" as an essential function of the position. The declaration of Steve Redding, UPS's Southern California Human Resources Operations Manager, confirms the essential nature of this lifting requirement. Finally, Wright agreed during her deposition that utility drivers were required to perform these tasks (although not that these tasks were essential).

However, the evidence is not one sided. "[A]n employer may not turn every condition of employment which it elects to adopt into a job function, let alone an

---

[1]The parties agree that, on February 26, 2010, Wright's relevant restrictions were that she not lift greater than 40 pounds, with occasional overhead lifting permitted.

essential job function, merely by including it in a job description," *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009) (internal quotation marks omitted), and the job description document here has features that, a jury could conclude, make it particularly unreliable as a description of a utility driver's essential functions. UPS's job description document is not limited to utility drivers but purports as well to define the essential functions of jobs such as "Air Feeder Driver," in which drivers only very "occasionally" encountered a package in excess of 40 pounds. Relatedly, the document identifies a number of vague duties as "Essential Job Functions," including the catchall ability to "[p]erform other functions that may be assigned." Also, the job description contains the disclaimers that "[t]he essential functions of this job may vary greatly" and "employees may not perform all of the essential job functions listed [in the document]." The job description document is thus of limited evidentiary value in proving the essential functions of the utility driver position in particular.

UPS offered scant other evidence of the kinds suggested in § 12926(f). UPS presented no evidence, for example, suggesting that "the reason the [utility driver] position exists" is specifically to lift packages weighing more than 40 pounds unassisted, § 12926(f)(1)(A); that there are a "limited number" of employees who

4

can perform the particular task of lifting packages weighing more than 40 pounds unassisted, § 12926(f)(1)(B); or that lifting more than 40 pounds unassisted is "highly specialized," § 12926(f)(1)(C).

The evidence as to § 12926(f)(2)(C), "[t]he amount of time spent on the job performing the function," was sparse and mixed. UPS's essential functions document was silent as to how often lifting in excess of 40 pounds unassisted was required, and UPS presented no other evidence showing how much time was actually spent performing this task. Wright testified that the packages on residential routes were "typically 20, 30 pounds or less . . . [m]ostly less," that "most" in fact were only "about ten pounds," and that she only encountered packages between 70 and 150 pounds "[o]nce a week." Although Wright also testified, more generally, that she had "frequently" lifted packages in excess of 50 pounds and "had to lift one to 70 pounds repetitively throughout the day," those statements did not attempt to estimate the relative time spent on larger as opposed to smaller packages.

In sum, because "[t]he record contains conflicting evidence as to whether the ability to [lift packages over 40 pounds unassisted] is an essential function of the [utility] car driver position," *Morton v. United Parcel Serv., Inc.*, 272 F.3d 1249, 1255 (9th Cir. 2001), *overruled on other grounds by Bates v. United Parcel Serv.,*

*Inc.*, 511 F.3d 974 (9th Cir. 2007) (en banc), summary judgment on that issue was not appropriate.

**(b)** If the plaintiff in a FEHA disability discrimination case argues that she could have performed the essential functions of her desired job with accommodation, then "[t]he plaintiff has the burden of providing at least a facial showing that a reasonable accommodation is possible," *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1157 (9th Cir. 2000), but to do so, she "need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002).

Wright met her burden of "providing at least a facial showing that a reasonable accommodation [wa]s possible." *Braunling*, 220 F.3d at 1157. Wright's accommodation checklist identified several potential accommodations, including "[r]educing the frequency of heavy [packages]" in her truck. "'Reasonable accommodation' [under FEHA] may include . . . [j]ob restructuring . . . ." Cal. Gov't Code § 12926(p)(2). Wright supported her suggestion with her own testimony about the feasibility of her suggestion, and testimony by UPS employee Kimberley Jensen, who testified that UPS had the technological capacity to reduce the number of heavy packages in a particular truck, and often did so to "even out the loads." There was also evidence in the record that UPS managers

6

had admitted that the "[m]eans [e]xist[ed]" to accommodate Wright by loading fewer heavy packages on her car, i.e., that it was technologically and "physically possible" to do so.

Apart from its essential function position, UPS's only argument that Wright's proposed accommodation of loading fewer heavy packages in her truck was unreasonable as a matter of law was that doing so "would violate the [collective bargaining agreement's] premise that all Drivers shall earn a fair day's pay for a fair day's work." But UPS has not identified any specific provision that would be violated by the proposed accommodation, let alone a "*direct conflict*" with the "CBA's bona fide seniority system," a violation of which would make a proposed accommodation unreasonable as a matter of law. *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 682 (9th Cir. 2001).

Because there were genuine disputes of material fact as to whether Wright could have performed the essential functions of the utility driver job with accommodation, and because UPS has not shown that Wright's proposed

accommodation was unreasonable as a matter of law, summary judgment on Wright's disability discrimination claim was not appropriate.[2]

**(2)** The district court also erred in granting summary judgment to UPS on Wright's failure to accommodate claim.

"For purposes of a [failure to accommodate] claim, the plaintiff proves he or she is a qualified individual by establishing that he or she can perform the essential functions of the position to which reassignment is sought, rather than the essential functions of the existing position." *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000); *see also* Cal. Gov't Code § 12940(m). Wright sufficiently indicated several reasonable accommodations, including both modifications to the utility driver position Wright previously held and reassignment to other positions, that UPS allegedly failed to provide.

In her accommodation checklist, Wright had requested that she be reassigned, inter alia, as a "Shuttle Driver," or "Full time Air Driver." She also noted in her district court papers that she had sought job modification of the utility driver position.

---

[2]Because the district court did not rule on UPS's arguments, in the alternative, that summary judgment was appropriate on Wright's disability discrimination claim because Wright allegedly did not suffer an adverse employment action and/or is estopped from arguing that she is a qualified individual with a disability, we do not reach those issues on appeal.

On this record, a reasonable jury could have found that Wright was a qualified individual who could have performed the essential duties of the positions to which she sought reassignment. *Jensen*, 85 Cal. App. 4th at 256; § 12940(m). After the checklist meeting, UPS maintained that reassignment to a full-time Air Driver or Shuttle Driver position would create a general "CBA conflict"—but not, specifically, a conflict with a bona-fide seniority system, or any specific CBA provision. Likewise, as explained above, a reasonable juror could find that UPS failed to accommodate Wright by reducing the frequency of heavy packages in her truck. *See* § 12940(m). Summary judgment was therefore inappropriate on Wright's failure to accommodate claim as well.[3]

**(3)** Finally, there were genuine issues of material fact as to whether UPS engaged in the interactive process in good faith, as is required under FEHA. *See* Cal. Gov't Code § 12940(n).

Wright presented evidence from which a reasonable jury could have found that UPS did not satisfy its interactive process duties. UPS failed to reengage with Wright after she received new medical restrictions increasing her weight-lifting

---

[3]UPS did not below and does not now argue for summary judgment on the ground that Wright's proposed accommodations of reassigning her to a different position or of loading fewer heavy packages on her truck would result in undue hardship to UPS. *See Morton*, 272 F.3d at 1256–57.

limit in February and March of 2010. Although there was evidence that it was UPS's policy to have a new accommodation checklist meeting after an employee's medical restrictions changed, no new checklist meeting was held with Wright when that occurred. "The employer's obligation to engage in the process in good faith is continuous." *Scotch v. Art Inst. of California-Orange Cnty., Inc.*, 173 Cal. App. 4th 986, 1013 (2009). Construing the evidence in the light most favorable to Wright, UPS's failure to have a second meeting constitutes a genuine dispute of material fact as to whether it met that obligation. *See id.* at 1013–15.

\* \* \* \*

As we have repeatedly cautioned, "it should not take much for [a] plaintiff in a discrimination case to overcome a summary judgment motion." *Nigro v. Sears, Roebuck & Co.*, No. 12-57262, 2015 WL 1591368, at \*3 (9th Cir. Apr. 10, 2015). "'This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.'" *Id.* (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000)).

For the foregoing reasons, we reverse the district court's grant of summary judgment on Wright's claims for disability discrimination, failure to accommodate,

and failure to engage in the interactive process in good faith, and remand for further proceedings consistent with this disposition.

**REVERSED and REMANDED.**