NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 18 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PRESTON LEE, | No. 22-15288 |
| Plaintiff-Appellant, | D.C. No. 1:20-cv-00489-LEK-KJM |
| v. | |
| L3HARRIS TECHNOLOGIES, INC.; JOHN DOES, 1-10; JANE DOES, 1-10; DOE CORPORATIONS, 1-10; DOE PARTNERSHIPS, 1-10; DOE UNINCORPORATED ORGANIZATIONS 1-10, | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted February 14, 2023
Honolulu, Hawaii

Before:  BEA, COLLINS, and LEE, Circuit Judges.

Preston Lee sued his employer, L3Harris Technologies, Inc. ("L3"), alleging

violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§ 12111, *et seq.*; a comparably worded Hawaii statute, *see* HAW. REV. STAT. § 378-

2; and the Hawaii Whistleblowers' Protection Act ("HWPA"), *see* HAW. REV.

STAT. § 378-62.  As relevant here, Lee alleged that his June 22, 2020 firing, which

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

was ostensibly over a November 6, 2019 confrontation with a coworker (Igne), actually was due to discrimination against him on account of his Post-Traumatic Stress Disorder ("PTSD") and constituted retaliation against him for reporting Igne's alleged misconduct. The district court granted summary judgment to L3, and Lee appealed. We have jurisdiction over Lee's appeal under 28 U.S.C. § 1291. Reviewing the district court's order de novo, *LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 987 (9th Cir. 2001), we affirm in part and reverse in part.

1. To determine whether Lee presented sufficient evidence to create a triable issue of disability discrimination in employment under federal or Hawaii law, we use the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014); *Nozawa v. Operating Eng'rs Loc. Union No. 3*, 418 P.3d 1187, 1198–99 (Haw. 2018). To carry the initial burden to establish a prima facie case at step one of that framework, a plaintiff must present evidence that (1) he is disabled; (2) he is qualified to hold his job if provided reasonable accommodations; and (3) he suffered an adverse employment action because of his disability. *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000). L3 argues that Lee failed to satisfy his burden on the second and third elements, but we disagree.

a. Based on the summary judgment record, a reasonable trier of fact could

conclude that Lee was qualified for his job. Lee supplied competent evidence that, for nearly 26 years, he had been employed in various positions, without performance issues, by U.S. Navy contractors (most recently, L3) at the Pacific Missile Range Facility in Barking Sands on Kauai.

L3 argues that, under *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941 (9th Cir. 2015), "[a]n essential function of almost every job is the ability to appropriately handle stress and interact with others," and that a reasonable trier of fact would have to conclude that Lee "could not perform" this essential function and was therefore unqualified. *Id*. at 944. While *Mayo* upheld summary judgment for an employer on this issue, it involved much more extreme facts. *Id*. at 945 (upholding summary judgment based on uncontested evidence of Mayo's "credible, detailed, and unwavering plan to kill his supervisors"). We agree with the district court that a reasonable trier of fact could find that the threatening language that Lee used with reference to Igne in a conversation with a coworker did not constitute a "serious and credible threat[] of violence." *Id.* at 945 n.4. L3 has not pointed to any other undisputed evidence that would require a rational trier of fact to find in its favor on this issue.

We also reject L3's argument that Lee was estopped from contesting this issue based on his prior application for disability benefits from the Department of Veterans Affairs ("VA"). *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795

3

(1999). There is no inherent inconsistency between a claim for VA benefits and being "qualified" in the sense that a disability discrimination claim requires. *See Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 957 (9th Cir. 2013). Moreover, nothing Lee stated in connection with his VA benefits application, such as his statements about anger-related work conflicts and discipline, is irreconcilable with his contention that he is qualified for his job within the meaning of the ADA.

b. Lee also presented sufficient evidence to create a triable issue as to whether he was fired because of his disability. A trier of fact could reasonably conclude that, after the November 2019 confrontation, the concerns leading L3 to terminate Lee's employment were based on his PTSD. As we recognized in *Mayo*, "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." 795 F.3d at 946 (citation omitted). A rational trier of fact could conclude that Lee's conduct during the November incident resulted from his PTSD, and that this principle is therefore applicable here. Although we held in *Mayo* that the scope of this principle is limited by the rule that the individual must still be "qualified," *see id.*, we have already explained why a reasonable trier of fact could find that limitation inapplicable here. Moreover, on this record, a reasonable trier of fact could find that L3's evaluation of the November 2019 incident was dispositively affected by stereotypical thinking about persons with PTSD. And because the decision to fire Lee was made in

4

January 2020, the temporal sequence of events is consistent with a rational inference of causation. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003).

c. Assuming that L3 has met its burden at step two of the burden-shifting framework, we conclude that the evidence raised a genuine issue of material fact as to whether L3's asserted reasons for firing Lee were pretextual. L3 was aware of Lee's PTSD, and his PTSD was mentioned prominently in an internal communication regarding whether to take disciplinary action against Lee after the November 2019 incident. Given the conflicting inferences that could be drawn from the evidence, we conclude that a reasonable trier of fact could find that L3's decision to terminate Lee based on the November incident was a pretext for terminating him because of his PTSD.

2. The district court correctly granted summary judgment with respect to Lee's retaliation claim under the HWPA.[1] This claim rests on the contention that L3 retaliated against Lee for his protected conduct in reporting to management his belief that Igne was stealing gasoline. However, Lee stated at his June 25, 2021 deposition that he had *not* "made any allegations about [Igne] stealing gas prior to

---

[1] As L3 correctly noted in its answering brief, Lee's opening brief addressed only his retaliation claim under the HWPA, and not his retaliation claims under the ADA or under Hawaii Revised Statutes § 378-2. We deem any challenge to the dismissal of those claims to be forfeited. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

[a] November 18, 2019 meeting." Because L3 had already begun its investigation into the November 9, 2019 incident by the time that Lee made that report, no reasonable trier of fact could conclude that the investigation was undertaken in retaliation for the report. On appeal, Lee points to his October 20, 2021 declaration in opposition to summary judgment, in which he stated that he had also made an earlier report in April 2019 about Igne allegedly stealing gas. But as the district court noted elsewhere in its order, Lee could not create a genuine issue of material fact simply by submitting a declaration that unambiguously contradicted his deposition testimony. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). Moreover, apart from his arguments about the timing of his report about Igne, Lee did not point to any evidence that would support a reasonable inference that his report of the alleged gas theft was what caused him to be fired.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**